```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
                                                            :
TATYANA ABDULZALIEVA and ALENA                              :
DAINEKA, on behalf of themselves and                        :   **MEMORANDUM DECISION**
others similarly situated,                                  :   **AND ORDER**
                                                            :
                            Plaintiffs,                     :   21-cv-124 (BMC)
                                                            :
            - against -                                     :
                                                            :
ADVANCED DOMINO, INC.; DOMINO                               :
GROUP, LLC; PROGRESS VGA, LLC;                              :
BORIS SALKINDER; GENADI VINITSKI;                           :
YAKOV BEKKERMAN; and                                        :
ALEKSANDR MALTSEV;                                          :
                                                            :
                            Defendants.                     :
                                                            :
----------------------------------------------------------- X
```

**COGAN**, District Judge.

Plaintiffs Tatyana Abdulzalieva and Alena Daineka have sued their former employer and several of its alleged owners (collectively, "defendants"), contending that they failed to pay overtime in violation of the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"). Before me is plaintiffs' motion for conditional approval to proceed with a collective action and for court-facilitated notice under the FLSA. See 29 U.S.C. § 216(b). Because plaintiffs have met their burden of showing that they are similarly situated to the non-managerial employees in the proposed collective, the motion is granted.

## BACKGROUND

Alena Daineka worked as a cashier at defendants' supermarket for three years, from early 2017 to early 2020. According to her declaration, she worked 60 to 72 hours per week with no overtime pay. She instead received a flat rate, which started at $13 per hour and eventually rose to $15 per hour. Daineka further alleges that, each week, defendants provided a paystub and

check showing fewer hours than she actually worked, paying the remainder of her wages in cash. Defendants also deducted a half-hour's wages for a lunch break, even though she did not actually receive a break.

Tatyana Abdulzalieva worked at the supermarket at roughly the same time as Daineka, from late 2016 to late 2020. Abdulzalieva spent part of this time as a cashier, working approximately 50 hours per week. Like Daineka, she alleges that she received a flat rate, which started at $9.00 per hour and eventually rose to $15.00 per hour. Defendants used the same alleged payment method. Specifically, they provided a pay stub showing $450 for 30 hours of work, and then they provided the remaining portion of her wages in cash. Defendants also deducted a half-hour of wages each day for a non-existent lunch break.

Unlike Daineka, however, Abdulzalieva spent nearly three years – from February 2017 to November 2019 – working as an "office assistant." In this role, Abdulzalieva tracked the store's inventory and ensured it was properly placed on the shelves. She also recorded employees' hours. Specifically, the store's owner and general manager, defendant Boris Salkinder, created work schedules and tasked Abdulzalieva with recording each employee's hours in a notebook at the end of each day. Abdulzalieva also observed another supervisor, defendant Genadi Vinitski, recording those hours in an Excel spreadsheet. Then, at the end of each week, Abdulzalieva handed each employee an envelope containing their check and cash payment. For this work, Abdulzalieva received a flat rate of pay. It started at $3,000 per month, but it then became $350 per week with an additional $1,600 cash payment at the end of each month. Abdulzalieva alleges that she did not receive overtime compensation.

Daineka and Abdulzalieva contend that they were not alone in receiving a flat rate of pay. Both name several other employees who, in various conversations at the supermarket, reported

that they never received overtime compensation. Abdulzalieva adds the names of several other employees who she recorded receiving a flat rate, paid partly in check and partly in cash. Based on these allegations, Daineka and Abdulzalieva now seek conditional approval to proceed with a collective action.

## DISCUSSION

### I.     The Collective Action

The FLSA authorizes employees to bring a collective action to recover unpaid overtime compensation on behalf of themselves and similarly situated employees. See 29 U.S.C. § 216(b). Because similarly situated employees can become plaintiffs only by filing written consent with the court, see id., courts have discretion to facilitate notice to those employees, see Hoffmann-La Roche, Inc. v. Sperling, 493 U.S. 165, 169 (1989). Courts often refer to this process as "certification." See, e.g., Weng v. Kung Fu Little Steamed Buns Ramen, Inc., No. 17-cv-273, 2018 WL 1737726, at *2 (S.D.N.Y. March 26, 2018). I refer to it as approval to proceed with a collective action, for this terminology avoids confusion with certification of class actions under Federal Rule of Civil Procedure 23.

Approval of a collective action consists of a two-step process. See Myers v. Hertz Corp., 624 F.3d 537, 554–55 (2d Cir. 2010). At the first step, which I call conditional approval, the court "mak[es] an initial determination to send notice to potential opt-in plaintiffs who may be similarly situated to the named plaintiffs with respect to whether a FLSA violation has occurred." Id. at 555 (quotation omitted). At the second step, "the district court will, on a fuller record, determine whether a so-called collective action may go forward by determining whether the plaintiffs who have opted in are in fact similarly situated to the named plaintiffs." Id. (quotation omitted).

This case is at the first step. It requires plaintiffs to make "a modest factual showing that [they] and potential opt-in plaintiffs together were victims of a common policy or plan that violated the law." Id. (quotation omitted). "The focus of the inquiry is not on whether there has been an actual violation of law but rather on whether the proposed plaintiffs are similarly situated with respect to their allegations that the law has been violated." Beaton v. Verizon New York, Inc., No. 20-cv-672, 2020 WL 5819902, at *2 (E.D.N.Y. Sept. 30, 2020) (alteration adopted) (quotation omitted). To show that they are similarly situated, plaintiffs must use pleadings, affidavits, declarations, and other evidence to establish a "factual nexus" between their situation and that of the potential opt-in plaintiffs. Fernandez v. On Time Ready Mix, Inc., No. 14-cv-4306, 2014 WL 5252170, at *1 (E.D.N.Y. Oct. 4, 2014) (quotation omitted). Courts have repeatedly emphasized the "minimal" nature of this burden, as "the determination that the parties are similarly situated is merely a preliminary one that may be modified or reversed at the second certification stage." Rosa v. Dhillon, No. 20-cv-3672, 2020 WL 7343071, at *4 (E.D.N.Y. Dec. 14, 2020) (quoting Anjum v. J.C. Penney Co., No. 13-cv-460, 2015 WL 3603973, at *5 (E.D.N.Y. June 5, 2015)).

Here, plaintiffs seek conditional approval of a collective consisting of all non-managerial employees at the supermarket who did not receive overtime compensation. This collective would include cashiers, cooks, deli workers, "truck unloaders," "shelf stockers," and the staff of the meat department, fish department, and bakery department. For evidence, plaintiffs rely on the complaint, their own declarations, and what they say are copies of handwritten employee time records.

This evidence shows that plaintiffs have met their minimal burden. For starters, the declarations show that plaintiffs were similarly situated to the other cashiers at the supermarket.

"Several courts have accepted affidavits from two plaintiffs as sufficient to establish a 'common policy or practice of failing to pay overtime.'" Id. at *5 (quoting Elamrani v. Henry Limousine, Ltd., No. 15-cv-2050, 2016 WL 5477590, at *3 (E.D.N.Y. Sept. 28, 2016) (collecting cases)). This sort of evidence is sufficient when the plaintiffs' position is a "commoditized" one, such that an employer would have no reason to treat certain employees any differently than it treated other employees in a given position. See id. at *6 (addressing gas station attendants); see also Siewmungal v. Nelson Mgmt. Grp. Ltd., No. 11-cv-5018, 2012 WL 715973, at *3 (E.D.N.Y. March 3, 2012) (applying this logic to security guards). That logic applies with equal force here. Both plaintiffs declare that, when they worked as cashiers, defendants used the same payment method – namely, paying a flat hourly rate, deducting a half-hour's wages for an unused lunch break, and then providing a paystub and check for less than 40 hours of work and paying the rest of the hours in cash. Defendants have offered no reason why they would have paid the other cashiers any differently.

Plaintiffs have also "go[ne] beyond their own circumstances," naming other cashiers who were subject to this policy. See Barrus v. Dick's Sporting Goods, Inc., 465 F. Supp. 2d 224, 230 (W.D.N.Y. 2006). Abdulzalieva states that, through her work as an office assistant, she overserved that another cashier, Ludmilla Podgornova, did not receive overtime compensation. Daineka then states that she spoke with Podgornova, who stated that Daineka "should not expect overtime pay for [her] long hours, as no cashiers received proper overtime and no cashiers received an uninterrupted lunch period." Daineka adds that she "stayed in touch with Podgornova" after leaving the supermarket, and in March 2021, Podgornova explained that the "failure to pay overtime is why she left, because at that time she had recently started a family and the low pay she received was not enough for her family." This evidence is enough to establish a

5

factual nexus between plaintiffs and the other cashiers. See, e.g., Beaton, 2020 WL 5819902, at *4 (holding that a "technician escort" had shown a factual nexus between himself and the other escorts where his declaration identified the names and positions of three other workers "who all complained, in some form or another, that defendant failed to pay them for the full hours they worked").

Plaintiffs have also established a factual nexus between themselves and the remaining non-managerial employees. In her declaration, Daineka reports that, in September or October 2019, she spoke with several employees during a cigarette break. An employee in the fish department, Larisa Sadlovskaya, was "particularly vocal about her dissatisfaction" with her work. Sadlovskaya recounted how she "commonly worked many more than forty hours each week, but received the same pay at a straight hourly rate for all hours that she worked." Abdulzalieva declares that she, too, spoke with Sadlovskaya. It was in November 2020, after Sadlovskaya was terminated. She was "very unhappy," complaining that Salkinder had treated her "disrespectfully," that she had never received overtime, and that defendants "never gave her lunch breaks even though they deducted such time from her time records."

Plaintiffs detail several similar conversations. Daineka recalls discussing complaints about overtime with Angela Gulina, an employee in the bakery department. Abdulzalieva then recounts conversations with Amalye Sakanyan, Leyla Mamedova, and Naima Ismailova, who all worked in the bakery department. For each conversation, plaintiffs provide the context, the content, and the approximate date. These details show that the allegations are not, as defendants contend, "generalized," "speculative," or "conclusory." Indeed, plaintiffs offer substantially more detail than the plaintiffs in the cases on which defendants rely. See Sanchez v. JMP Ventures, LLC, No. 13-cv-7264, 2014 WL 465542, at *2 (S.D.N.Y. Jan. 27, 2014) (denying

6

conditional approval where the plaintiff relied on "observations" and "conversations" with other employees but did not provide any details); see also Chen v. Asian Terrace Rest., Inc., No. 19-cv-7313, 2020 WL 4041133, at *3 (E.D.N.Y. July 17, 2020) (conditionally approving a collective consisting of a restaurant's non-managerial employees where the plaintiff's affidavit identified several other employees who worked more than 40 hours per week at a flat weekly rate).

Plaintiffs also add more compelling evidence: Abdulzalieva's description of her work as the office assistant. Through that position, Abdulzalieva allegedly gained access to the list of employees, the hours they worked, and the compensation they received. She also claims to have handed out the envelopes with the paystubs, checks, and cash payments. And she names the specific cashiers, cooks, deli workers, "food preparers," "unloaders and unpackers," "counter workers," and staff of the fish, meat, and bakery departments who she observed receiving those payments. These allegations give substance to Abdulzalieva's claim that she knows and has observed that the non-managerial employees never received overtime compensation. That, too, distinguishes this case from the ones that defendants cite. See Zheng v. Good Fortune Supermarket Grp. (USA), Inc., No. 13-cv-60, 2013 WL 5132023, at *5 (E.D.N.Y. Sept. 12, 2013) (denying conditional approval where the plaintiff stated that she "observed that the time worked by employees was not accurately reflected by the defendants' time keeping system" but "neither identifie[d] these employees nor explain[ed] the basis for her observations").

Still, defendants insist that Abdulzalieva's work as an office assistant ensures that she is not similarly situated to other employees. In defendants' view, an office assistant falls within the FLSA exemption for "any employee employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1). But even if this work were exempt, Abdulzalieva

7

would still be similarly situated through her work as a cashier. And more to the point, other courts in this Circuit have "recognized that the possible existence of exemptions is a merits issue that is not relevant at the conditional certification stage." Jackson v. Bloomberg, LP, 298 F.R.D. 152, 161 (S.D.N.Y. 2014) (citing Trawinski v. KPMG LLP, No. 11-cv-2978, 2012 WL 6758059, at *4 (S.D.N.Y. Dec. 21, 2012)). Thus, a defendant cannot defeat a motion for conditional approval "simply by putting forth some evidence that the lead plaintiff falls under one of the potential exemptions." Panora v. Deenora Corp, No. 19-cv-7267, 2020 WL 7246439, at *3 (E.D.N.Y. Dec. 9, 2020).[1]

At this preliminary stage, plaintiffs' evidence is enough to show that they and the other non-managerial employees at the supermarket were victims of a common policy or plan that violated the law. I therefore grant conditional approval to proceed with a collective action.

## II.   Court-Facilitated Notice

### A.   Disclosure of Contact Information and the Initial Notice

Plaintiffs have also moved for court-facilitated notice under the FLSA. See Hoffmann-La Roche, 493 U.S. at 169. Plaintiffs first seek to require defendants to disclose "the names, last known mailing addresses, all known home and mobile telephone numbers, all known email addresses, dates of employment, and positions" for all non-managerial employees who worked at the supermarket within three years of the filing of the complaint. I will limit it to employees who worked at the supermarket within three years of this order, because "the statute of limitations applicable to a plaintiff's claim continues to run until he or she has filed a written consent with

---

[1] Defendants have not argued that any other non-managerial employees would fall within an exemption. And while defendants have also offered their own evidence, "competing declarations do not undermine a plaintiff's showing in the first stage of the conditional process" because "the court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations." Beaton, No. 20-cv-672, 2020 WL 5819902, at *5 (alteration adopted) (quotation omitted).

the court to join the lawsuit," Rotari v. Mitoushi Sushi, Inc., 448 F. Supp. 3d 246, 254 (E.D.N.Y. 2020) (quotation omitted), and plaintiffs have not asked for any equitable tolling. Additionally, defendants need not provide the employees' phone numbers. See, e.g., Gordon v. Kaleida Health, No. 08-cv-378S, 2009 WL 3334784, at *9 (W.D.N.Y. Oct. 14, 2009). Because defendants have not lodged any other objections to this request, I will not otherwise adjust its scope.

Defendants shall disclose this information in a computer-readable format within 21 days of this order. Plaintiffs may then disseminate the notice to the employees identified above. Because defendants have not objected to the content of the notice, I will adopt plaintiffs' proposed notice as long as plaintiffs adjust the date on the notice to reflect that it applies only to non-managerial employees who worked at the supermarket within three years of this order.

### B.     Reminder Notice

Plaintiffs also seek to send a reminder notice and consent forms either halfway through the opt-in period or 30 days after the original mailing of the notice. "[T]he weight of caselaw in the Second Circuit has in recent years moved towards approval of reminder notices in light of the remedial purpose of the FLSA." Meo v. Lane Bryant, Inc., No. 18-cv-6360, 2019 WL 5157024, at *13 (E.D.N.Y. Sept. 30, 2019) (collecting cases). Plaintiffs may mail and email the reminder notice and consent forms to potential opt-in plaintiffs 30 days before the opt-in deadline, which shall be halfway through the opt-in period. Because defendants have not objected to any content in the reminder notice, I will adopt the proposed reminder notice. See, e.g., Panora, 2020 WL 7246439, at *6.

### C.     Posting of the Notice

Plaintiffs also seek a court order that defendants post the notice at the supermarket. In this Circuit, courts "routinely approve requests to post notice on employee bulletin boards and in

other common areas, even where potential members will also be notified by mail, because it maximizes potential plaintiffs' opportunities to be informed of the pendency of the litigation and consider whether to opt in." Beaton, 2020 WL 5819902, at *6 (quotation omitted).  I therefore order defendants to post the notice and consent forms at a conspicuous location in the supermarket within seven days of this order.  Defendants need not provide an affidavit providing proof of compliance, as plaintiffs have requested, since there is no reason to believe that defendants wish to face the consequences of non-compliance with a court order.

### D. Translations of the Notice

Plaintiffs' final request is to have the notice translated into Russian.  Defendants do not oppose this request, and courts generally "permit notice to be translated into the mother tongue of non-English speaking groups of potential plaintiffs."  Valerio v. RNC Indus., LLC, 314 F.R.D. 61, 76 (E.D.N.Y. 2016).  The request is granted.

### CONCLUSION

Plaintiffs' motion for conditional approval to proceed with a collective action [27] is granted.  Within 7 days of this order, defendants shall post the notice and consent forms in a conspicuous location at the supermarket.  Within 21 days of this order, defendants shall disclose the contact information of the supermarket's non-managerial employees as set forth above.  Those who wish to participate in this FLSA collective action must opt in within 60 days of this order.  Plaintiffs may mail and email the reminder notice to potential opt-in plaintiffs 30 days

before that deadline. The notice, reminder notice, and the notice posted at the supermarket shall be translated into Russian.

**SO ORDERED.**

Digitally signed by Brian M. Cogan
_____
U.S.D.J.

Dated: Brooklyn, New York
      April 26, 2021